# COURT OF APPEALS OF VIRGINIA

## Record No. 1169-25-1

MARK J. CALCAGNI

v.

CITY OF NORFOLK

Present: Chief Judge Decker, Judges Raphael and White

Opinion Issued July 21, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

(Joseph V. Sherman; Poole Brooke Plumlee, P.C., on briefs), for appellant.

(Katherine A. Taylor, Assistant City Attorney, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE KIMBERLEY SLAYTON WHITE

This case stems from an appeal from general district court to circuit court for a trial de novo.

Following a bench trial, the trial court convicted Mark J. Calcagni of one count of a zoning

ordinance violation, imposing a $1,000 fine that the trial court suspended in its entirety. Calcagni

appeals his conviction on the grounds that the summons issued by the general district court was

inadequate to inform him of the nature of the offense and that the evidence at trial was insufficient

to sustain a conviction for a zoning ordinance violation. We disagree and affirm the trial court's

judgment.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On February 9, 2023, a zoning inspector, Robert Buckham, responded to complaints that the property located at 402-428 and 434-438 Naval Base Road (the Property) was being used to store heavy equipment and gravel. Buckham was unable to find any current business license or zoning approval for the Property. When Buckham went to the Property, he observed heavy equipment such as dump trucks, tractor trailers, excavators, and piles of gravel. Because the Property was being used and occupied without any zoning approval, Buckham posted a "Notice of Zoning Violation." He also mailed the notices to the owner of record advising how to appeal these zoning violations. No such appeal was ever filed.

Later that same day, Calcagni, the owner of the Property met with Buckham. Buckham gave him a copy of the Notice, advised Calcagni that using a property requires zoning approval (i.e., a zoning certificate) and explained what he needed to do to correct the zoning violations.

On March 15, 2023, Calcagni called Buckham and told him he tried to get his business license and obtain approval to use the Property for storage. Buckham responded that Calcagni needed to either get the zoning approval or remove everything from the Property and to cease using it.

On March 22, 2023, Buckham met with Calcagni at the Property regarding the fact that additional gravel had been dumped there. Buckham tried to issue Calcagni a summons for a

zoning violation, but Calcagni said he was homeless and did not have his driver's license with him. As a result, Buckham instead obtained a magistrate summons and, on March 28, 2023, the Virginia Beach police served Calcagni with the summons.

The summons commanded Calcagni to appear before Norfolk General District Court to answer the charge that on or about February 9, 2023, he did unlawfully "[o]ccupy or use land or a structure located at 402-428 and 434-438 Norfolk Naval Base Rd., Norfolk, Virginia 23505 without first obtaining all appropriate permits, certificates, or development approvals, and complying with their terms and conditions." The summons further described the offense as a "Zoning Ordinance Violation."

In general district court, Calcagni requested and obtained nine separate continuances of his trial. Finally, on December 20, 2024, the general district court convicted Calcagni and he appealed to circuit court for a trial de novo.

Before the circuit court, Calcagni moved to dismiss the charge on the grounds that the summons issued in general district court was unconstitutionally vague.[2] At oral argument on this motion, the trial court expressed surprise that, given that Calcagni "went through a whole trial in General District Court," he was purportedly still confused as to the charge against him. The trial court confirmed that the attorneys before it were the same attorneys who tried the case in general district court and that discovery had been produced in that proceeding. The trial court added that it would assume that the discovery in the circuit court proceeding was sufficient unless it was

_____

[2] After first arguing that the City of Norfolk never cited the legal authority for the zoning violation, Calcagni then argued that the authority cited does not state what the City of Norfolk claims that it says. The trial court suggested that this may be an issue for trial.

advised otherwise and that the proper mechanism for doing so was a motion to compel. The trial court then denied Calcagni's motion to dismiss.[3]

At trial, the court heard evidence as to the above facts. Calcagni then moved to strike, explaining that although he was not asking to strike down the City of Norfolk's zoning ordinance, he was arguing that the evidence produced at trial was insufficient to sustain a conviction. The trial court denied this motion.

Calcagni then testified on his own behalf. Following his testimony, he renewed his motion to strike. The City of Norfolk responded, arguing that it was uncontested that on the date of the offense, Calcagni did not have a zoning certificate. Calcagni argued that the reason he did not have a zoning certificate (which he described as a "technical" requirement) was because the City of Norfolk was improperly requiring him to provide site plans before issuing such a certificate. The City of Norfolk responded that this case was simply about whether Calcagni was using the Property on February 9, 2023 without the proper zoning approval.

The trial court agreed, found Calcagni guilty, and imposed a $1,000 fine, which it suspended in its entirety upon Calcagni's coming into compliance with the City of Norfolk's land use rules and regulations. The trial court's ruling did not address what Calcagni needed to do to come into compliance and expressly stated that it was declining to address any of the issues that arose after February 9, 2023.[4] Calcagni appeals this conviction.

_____

[3] The trial court also denied Calcagni's request for a jury. This decision is not at issue in this appeal.

[4] Calcagni assigns error to the trial court's purported ruling that "the City can add discretion to the approval process to require Mr. Calcagni to obtain a site plan." To be clear, the trial court never made such a ruling.

ANALYSIS

I.

"In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI; *see also* Va. Const. art. I, § 8 ("That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation."); *Walshaw v. Commonwealth*, 44 Va. App. 103, 109 (2004) ("Both the United States and Virginia Constitutions guarantee a criminal defendant the right 'to be advised of the cause and nature of the accusation lodged against him.'" (quoting *Simpson v. Commonwealth*, 221 Va. 109, 114 (1980))).

Code § 19.2-74(A)(2) provides for the issuance of a summons for a violation of a city ordinance. Such a summons is exclusive to misdemeanor cases or cases made upon complaint of a local government official having the responsibility for the enforcement of an ordinance. Code § 19.2-73. A summons must:

> (i) state the name of the accused . . . ,
> (ii) describe the offense charged and state whether the offense is a violation of state, county, city or town law, and
> (iii) be signed by the magistrate or the law-enforcement office, as the case may be.

Rule 3A:4(b); *see Williams v. Commonwealth*, 5 Va. App. 514, 516 (1988) (explaining that, under this Rule, a summons "must describe the offense charged").

This Court explained that even when a summons contains an error, a defendant can still be properly convicted if the summons puts the accused on notice of the gravamen of the crime. *Ellis v. Commonwealth*, 75 Va. App. 162, 169 (2022); *see Williams*, 5 Va. App. at 517 (holding that a traffic summons that stated that the accused was charged with "speed 59/45" was sufficient to give him notice of the nature and character of the offense for which he was charged). In *Ellis*, a defendant entered into a plea agreement for a misdemeanor appeal but then moved to vacate his

conviction on the grounds that the ordinance cited in the summons issued by a law enforcement officer was incorrect. 75 Va. App. 166-67. This Court held, in relevant part, that an incorrect code or ordinance citation will not render a summons invalid "when the [accused] plainly had notice of the true nature of the charge against him." *Id*. at 172 (quoting *Flaherty v. Commonwealth*, 14 Va. App. 148, 152 (1992)).

Here, Calcagni's summons alleged that Calcagni did "[o]ccupy or use land or a structure located at 402-428 and 434-438 Norfolk Naval Base Rd., Norfolk, Virginia 23505 without first obtaining all appropriate permits, certificates, or development approvals, and complying with their terms and conditions." As the trial court correctly found, this description was sufficient to put Calcagni on notice as to the true nature of the charge against him. *See Ellis*, 75 Va. App. at 169; *Williams*, 5 Va. App. at 517.

Calcagni disagrees arguing that "the claims against Mr. Calcagni were too vague to allow Mr. Calcagni to understand the charges against him and defend his interests." Specifically, he argues that the summons "provided no details" and that his situation was similar to that of the protagonist in Franz Kafka's novel *The Trial*. But Calcagni never explained what additional details were required to put him on notice that he was being prosecuted for using the Property without a zoning certificate and to enable him to "defend his interests." *See Ellis*, 75 Va. App. at 169. Nor does he explain how he could have been prejudiced by any deficiency in the summons, given that he was tried de novo in circuit court following his conviction in general district court and, thus, was on notice of the charge against him at the time of this second trial. *See id.* at 171.[5]

---

[5] As we explained in *Ellis*, the de novo appeal to circuit court vacates "the decision of the lower court as if it had never occurred and provide[s] a new trial in the circuit court." *Ellis*, 75 Va. App. at 168 n.1 (quoting *Wright v. Commonwealth*, 52 Va. App. 690, 706 n.9 (2008) (en banc)). Because Calcagni's conviction in general district court is now a nullity, this Court cannot review this prior conviction. *See id.*

Instead, Calcagni points to *Satcher v. Commonwealth*, 244 Va. 220, 231 (1992), and *Sims v. Commonwealth*, 28 Va. App. 611, 619 (1998). But these two cases address the circumstances under which a defendant is entitled to a bill of particulars before trial. *Satcher*, 244 Va. at 231 (affirming the conviction because no bill of particulars is required when an indictment gives the accused notice of the nature and character of the offense); *Sims*, 28 Va. App. at 619-20 (affirming a conviction and explaining that whether to order a bill of particulars is committed to the discretion of the trial court and that even if a trial court abuses its discretion in failing to order a bill of particulars, that error does not necessarily require reversal). Because Calcagni does not contend that he requested a bill of particulars (let alone that the trial court denied his request), these two cases have little relevance here.

Calcagni also points to several federal circuit court decisions, *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946); *Boykin v. United States*, 11 F.2d 484, 485 (5th Cir. 1926); *Spence v. Dowd*, 145 F.2d 451, 453 (7th Cir. 1944); *United States v. Crummer*, 151 F.2d 958, 962 (10th Cir. 1945), but none of these cases appear to have any direct bearing on the questions raised in this appeal.

Finally, in his reply brief, Calcagni suggests that the trial court recognized that the summons was "so vague" that "surprise may result." But this is not a fair characterization of the trial court's remarks. Rather, the trial court, in ruling on Calcagni's motion to dismiss, briefly commented on discovery. After determining that the counsel for the parties before him were the same counsel in general district court and that discovery had been provided there, the trial court explained that if there was a motion for discovery and the City of Norfolk was not complying with its discovery obligations, the correct procedure would be a motion to compel. The trial court added:

> I appreciate [Calcagni's counsel's] concern to make sure
> there's no surprises, but this is a criminal trial. So to the extent the

- 7 -

> City wants to, I guess they're allowed to have some surprises; but again, there is some required discovery.
>
> The Court is assuming that that's being complied with unless it hears otherwise.

Viewed in context, this statement by the trial court cannot be fairly construed as an admission that the summons was inadequate. As a result, the trial court correctly denied Calcagni's motion to dismiss on the alleged grounds.

## II.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "Appellate courts are not tasked with 'say[ing] that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt . . . .'" *Id*. (first and second alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (citing *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). The Commonwealth "is not required to exclude every possibility that others may have committed the crime for which a defendant is charged, but is only required to exclude hypotheses of innocence that flow from the evidence." *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000).

Localities are agencies created by the Commonwealth. *Sinclair v. New Cingular Wireless PCS, LLC*, 283 Va. 567, 576 (2012). Under Dillon's Rule, "localities may exercise only those powers or adopt ordinances that the General Assembly expressly authorizes by statute or are conferred by necessary implication." *Lytle v. City of Suffolk*, 85 Va. App. 745, 761 (2025); *see also Payne v. Fairfax Cnty. Sch. Bd.*, 288 Va. 432, 437 (2014) (similar).

- 8 -

Code § 15.2-2286 permits "localities to impose land use restrictions through adoption of zoning ordinances." *Epperly v. County of Montgomery*, 46 Va. App. 546, 554 (2005). Localities are authorized to require the submission of "plan[s] of development" before the issuance of building permits "to assure compliance with regulations contained in [the] zoning ordinance." Code § 15.2-2286(A)(8). Code § 15.2-2286 authorizes "the imposition of penalties upon conviction of any violation of the zoning ordinance" with "[a]ny such violation [to constitute] a misdemeanor punishable by a fine of not more than $1,000." Code § 15.2-2286(A)(5).

The City of Norfolk's zoning ordinance states:

> No land shall be occupied or used and no building, structure or sign shall be located, constructed, reconstructed, enlarged or structurally altered, nor work commenced upon the same, nor occupied or used in whole or part for any purpose until the [Zoning Administrator] has issued a Zoning Certificate stating that the building and use comply with the provisions of this Ordinance for such use. No change of use shall be made in any building or part thereof, now or hereafter located, constructed, reconstructed, enlarged, or structurally altered, without a Zoning Certificate issued by the [Zoning Administrator].

Norfolk Zoning Ordinance 2.4.14(B). The zoning ordinance applies to the development of all lands within the City of Norfolk, unless it is expressly exempted. Norfolk Zoning Ordinance 1.4.1.

Here, the evidence at trial established that, as of February 9, 2023, Calcagni used and occupied the Property without any zoning approval. This evidence is sufficient to sustain Calcagni's conviction. *See Garrick*, 303 Va. at 182. On appeal, Calcagni never seriously contests that he used and occupied the Property without a zoning certificate. Rather, he argues that the City of Norfolk should have issued him a zoning certificate. ("No authority authorizes the City to require a site plan prior to issuing a zoning certificate . . . . This is the real breakdown between Mr. Calcagni and the City.") The City of Norfolk responds that, as of the offense date, he had not even applied for one. This Court need not address whether this contention is correct

or any of the post-February 9, 2023 communications between the parties regarding the need for site plans, because, as the trial court correctly found, these matters have no bearing on any issue in this case.[6]  As a result, the decision of the trial court is affirmed.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*

---

[6] Calcagni also repeatedly cites to authorities addressing Dillon Rule.  Calcagni's reliance on these authorities is unavailing because, as he conceded at trial, he is not challenging the constitutionality of any of the City of Norfolk's ordinances.